IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THERON JESSOP and LERHONDA JESSOP,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and GREG AYERS,<br><br>*Defendants*. | Case No. 6:24-cv-122-EFM |

## MEMORANDUM AND ORDER

Before the Court are two competing motions: Plaintiffs Theron Jessop's and LeRhonda Jessop's Motion to Remand (Doc. 16) and Defendant Greg Ayres' Motion to Dismiss (Doc. 10). The present case arises over insurance provided by Defendant State Farm Fire and Casualty Company ("State Farm") to Plaintiffs through its agent, Ayres. Because jurisdiction is a prerequisite to hearing a case, the Court must first address whether Plaintiffs properly added Ayres as a Defendant. Because Defendants cannot show with complete certainty that Plaintiffs' negligent procurement of insurance claim must fail as a matter of law, the Court grants Plaintiffs' Motion to Remand and denies Ayres' Motion to Dismiss as moot.

## I. Factual and Procedural Background[1]

Plaintiffs and Ayres are Oklahoma residents. In contrast, State Farm is an entity incorporated under Illinois law with its principal place of business in Illinois. Plaintiffs hired Ayres, an insurance agent for State Farm, to procure insurance for their house and property. Relevant here, Plaintiffs specifically asked Ayres to procure "replacement coverage" for their barn.[2] Ayres assured Plaintiffs that he would do so, ultimately issuing them a coverage policy for $41,100 for the barn, claiming it represented replacement coverage.[3] Ayres arrived at this figure based on his inspection on the barn, measurements, and use of State Farm's replacement cost estimator.

On March 31, 2023, a fire destroyed the barn and all contents within. Upon receiving Plaintiffs' insurance claim for the barn, State Farm determined that the barn's replacement value of the barn was merely $19,312.31. It also concluded that the barn's contents were worth only $8,208.74. Ayres advised Plaintiffs that the barn was "not that fancy" and that State Farm's valuation was appropriate. After subtracting for depreciation and the deductible, State Farm issued $12,589.24 to Plaintiffs for the barn and $5,996.41 for the barn's contents.

On February 23, 2024, Plaintiffs asserted claims against Defendants in Oklahoma state court for (1) bad faith and breach of contract against State Farm and (2) negligent procurement of insurance against Ayres. Plaintiffs' claim against Ayres relies solely on Ayres' procurement of replacement coverage for the barn and its contents. In total, they request over $75,000 in damages.

---

[1] The facts in this section are taken from Plaintiff's Complaint unless otherwise cited and are considered true for the purposes of this Order.

[2] Although the language of the agreement includes "other structures," the parties appear to agree that the barn is the only structure, besides the house, on Plaintiffs' property.

[3] Ayres also issued coverage for Plaintiffs' house, but that coverage and subsequent storm damage to the house is irrelevant to this outcome of this Order.

On April 3, 2024, Defendants removed the case to the Eastern District of Oklahoma. A week later, Ayres filed the pending Motion to Dismiss, arguing that Plaintiffs' claim for negligent procurement was unavailable to Plaintiffs under both the alleged facts and Oklahoma state law. Plaintiffs filed a Response and their own Motion to Remand, arguing that the Court lacks jurisdiction to decide Ayres' Motion. Within their briefing, Plaintiffs argue for the first time that they also asserted a fraud claim against Ayres, a cause of action notably absent from their Petition.

## II. Legal Standard

Federal courts have limited subject matter jurisdiction and are able to hear only those matters authorized by the U.S. Constitution and Congress.[4] Relevant here, 28 U.S.C. § 1332 provides for subject matter jurisdiction between citizens of different states where the amount in controversy is greater than $75,000.[5]

When an action is initially brought in state court, "[t]he federal removal statute, 28 U.S.C. § 1441, permits a defendant to remove to federal court any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[6] The party removing the case bears the burden of showing that the federal court has subject matter jurisdiction.[7] "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal

---

[4] *See* U.S. Const. art. III, § 2, cl. 1; *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (*quoting Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)).

[5] 28 U.S.C. § 1332(a).

[6] *Dutcher*, 733 F.3d at 984–85 (further quotations omitted).

[7] *See United States v. Grant*, 809 F. App'x 474, 475 (10th Cir. 2020) (citing *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002)) (brackets omitted).

statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."[8] "[A]ll doubts are to be resolved against removal."[9]

Normally, the joinder of a nondiverse defendant will defeat any attempt to remove a case to federal court under § 1332 because "[c]omplete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant."[10] However, fraudulent joinder has no such effect.[11] "Fraudulent joinder is a term of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."[12]

"To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[13] "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."[14] "In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal."[15] However, "upon specific allegations of fraudulent joinder the court may

---

[8] *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-1095 (10th Cir. 2005).

[9] *Warner v. CitiMortgage, Inc.*, 533 F. App'x 813, 816 (10th Cir. 2013) (quoting *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982)).

[10] *Dutcher*, 733 F.3d at 987.

[11] *See id.* at 987–88 (citing *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir.1967)).

[12] *Hodge v. Ford Motor Co.*, 2022 WL 2110264, at *1 (E.D. Okla. June 6, 2022) (citation omitted).

[13] *Dutcher*, 733 F.3d at 988 (further citation, quotations, and alteration omitted).

[14] *Id.* (further citation and quotations omitted).

[15] *Dodd v. Fawcett Publ'n, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964).

pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."[16]

To date, "[t]he Tenth Circuit has never explained in a published opinion" how "the party alleging fraudulent joinder must show the inability of the plaintiff to establish a cause of action against the non-diverse party."[17] However, "[w]here the Tenth Circuit has upheld the denial of remand, undisputed evidence showed that recovery against the nondiverse defendant was impossible as a matter of law."[18] "Therefore, in the interests of clarity, and consistent with Tenth Circuit precedent," courts in this circuit require "that, in order to demonstrate 'inability of the plaintiff to establish a cause of action against the non-diverse party in state court,' the party asserting federal jurisdiction must show that the plaintiff would have no possibility of recovery against the defendant."[19]

Nonliability must be established with complete certainty, a more demanding standard than that under Federal Rule of Civil Procedure 12(b)(6).[20] If the plaintiff could possibly recover on even one claim, the court must remand the case to state court.[21] Similarly, the Tenth Circuit instructs that "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."[22]

---

[16] *Id.* (citations omitted).

[17] *Mayes Cnty. FOP Lodge #116, Inc. v. Farmers Ins. Exch.*, 2020 WL 6136236, at *2 (N.D. Okla. Oct. 19, 2020) (further citation and quotations omitted).

[18] *Id.* at *3 (collecting cases).

[19] *Id.*; *see also Crabb v. CSAA Gen. Ins. Co.*, 2021 WL 3115393, at *2 (W.D. Okla. July 22, 2021); *Hicks v. FG Mins. LLC*, 2020 WL 2104928, at *2 (E.D. Okla. May 1, 2020).

[20] *See Dodd*, 329 F.2d at 85 (citation omitted).

[21] *See Dutcher*, 733 F.3d at 988.

[22] *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (further citation and quotations omitted).

### III.   Analysis

Although Defendants seek to defend their claim in federal court, it is clear from Plaintiffs' Petition that the Court lacks diversity jurisdiction over Plaintiffs' state law claims because both Plaintiffs and Ayres hail from Oklahoma.  Therefore, § 1332(a) remains unsatisfied.

Nevertheless, Defendants claim that Plaintiffs fraudulently joined Ayres in this case by asserting a baseless claim for negligent procurement of insurance against him.  The parties agree that absent Ayres, there would be complete diversity between the parties.  Plaintiffs, however, assert that Oklahoma law recognizes the type of negligent procurement of insurance claim at issue here.  Plaintiffs further argue that their Petition states a claim against Ayres for fraud, despite lacking any mention of fraud in the Petition itself.

Oklahoma law is clear that an insurance agent has no "duty to advise an insured with respect to his insurance needs."[23]  However, "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss."[24]  "This duty rests, in part, on 'specialized knowledge [about] the terms and conditions of insurance policies generally.'"[25]  As stated by the Oklahoma Court of Civil Appeals:

> To discharge their duty to act in good faith and use reasonable care, skill, and diligence in the procurement of insurance, including use of their specialized knowledge about the terms and conditions of insurance policies, insurance agents need only offer coverage mandated by law and coverage for needs that are disclosed by the insureds, and this duty is not expanded by general requests for "full coverage" or "adequate protection."[26]

---

[23] *Mueggenborg v. Ellis*, 55 P.3d 452, 453 (Okla. Civ. App. 2002).

[24] *Swickey v. Silvey Companies*, 979 P.2d 266, 269 (Okla. Civ. App. 1999).

[25] *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 83 P.3d 894, 895 (Okla. Civ. App. 2003).

[26] *Id.*

"[A]lthough Oklahoma law holds that 'an insurance agent owes no duty to offer the insured policy advice, such holding does not conflict with the quite different principle that, having undertaken to procure coverage for the insured, the agent must do so with professional care.'"[27]

For example, in *Johnson v. Shelter Mutual Insurance Co.*,[28] this Court adopted Magistrate Gerald L. Jackson's report and recommendation that the Court grant the plaintiff's motion to remand on fact almost identical to the present case.[29]  There, the plaintiff had "specifically requested [that the insurance agent] procure a replacement cost policy for her home."[30]  The insurance agent agreed to provide replacement cost coverage, but the parties disputed whether he had done so.[31]  Although Oklahoma courts had not addressed the issue directly, the Northern District of Oklahoma has previously held that a request for replacement coverage "could qualify as a 'need[] . . . disclosed by the insureds' that would trigger an agent's duty to provide such coverage if promised."[32]  Recognizing the intricate analysis of Oklahoma state law required to resolve the issue, as well as the disputed factual allegations, Judge Jackson concluded remand was necessary under Tenth Circuit precedent.[33]

Here, the alleged facts and applicable law warrant the same result as in *Johnson*.  Plaintiffs allege that they requested replacement coverage for their barn and other structures.  However,

---

[27] *Johnson v. Shelter Mut. Ins. Co.*, 2024 WL 1009548, at *4 (E.D. Okla. Feb. 16, 2024), *report and recommendation adopted*, 2024 WL 1178487 (E.D. Okla. Mar. 19, 2024) (quoting *Montano v. Allstate Indem.*, 211 F.3d 1278 (table) 2000 WL 525592, at *3 (10th Cir. Apr. 14, 2000)) (brackets omitted).

[28] 2024 WL 1178487 (E.D. Okla. Mar. 19, 2024).

[29] *Id.* at *1; *see also Johnson*, 2024 WL 1009548.

[30] *Johnson*, 2024 WL 1009548, at *3.

[31] *Id.*

[32] *See Rains v. CSAA Fire and Cas. Ins. Co.*, 2020 WL 6729085, at *4 (N.D. Okla. Nov. 16, 2020) (quoting *Rotan*, 83 P.3d at 895).

[33] *Id.* at *4.

Plaintiffs allege that Ayres in fact procured more than *twice as much coverage* as necessary to replace the barn. Thus, Plaintiffs argue that Ayres did not provide "replacement coverage" as promised.

Admittedly, this is an unusual theory of recovery for a negligent procurement claim without any clear precedent in Oklahoma law. Theoretically, an Oklahoma state court might conclude that under such unusual facts, Plaintiffs' negligent procurement is improper as a matter of law. Conversely, an Oklahoma court might consider Ayres' provision of substantially more coverage than necessary to be negligent procurement of insurance. After all, Ayres did not provide the requested amount. Drawing all reasonable inferences in favor of Plaintiffs, the increase coverage was likely accompanied by increased premiums, thus causing financial damages to Plaintiffs.

Under the law cited by the parties, either outcome is possible. And yet, Defendants' heavy burden in arguing fraudulent joinder requires them to show more than mere ambiguity in the law or a possibility of dismissal. Had Defendants delivered an Oklahoma case to the Court explicitly disallowing the theory of recovery urged by Plaintiffs, that burden would have been met. Here, however, Defendants invite the Court to wade through a morass of factually dissimilar cases to inferentially ponder how Oklahoma courts *might* rule. In other words, they fail to show with complete certainty that Oklahoma state courts would dismiss Plaintiffs' theory of recovery as a matter of law. Even though the Court has its doubts as to the viability of Plaintiffs' claim, those doubts must be resolved in favor of remand.

Without complete certainty as to the outcome of Plaintiffs' negligent procurement claim, the Court would have to speculate or perform an extremely intricate analysis of Oklahoma state law. Therefore, the Court cannot find that Plaintiff's negligent procurement claim is "so wholly

insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."[34] As it stands before this Court, Ayres is a properly joined defendant who divests the parties of complete diversity. Because the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a) to hear Plaintiffs' case, the proper course of action is to remand the case in its entirety to state court.

Given that the Court lacks subject matter jurisdiction based on Plaintiffs' negligent procurement claim against Ayres, it need not address Plaintiffs' newly raised argument that their Petition also states a claim for fraud. Furthermore, the Court lacks jurisdiction to decide Ayres' Motion to Dismiss and denies the same as moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand (Doc. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Ayres' Motion to Dismiss (Doc. 10) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 12th day of July, 2024.

This case is closed.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[34] *Brazell*, 525 F. App'x at 881 (further citation and quotations omitted).